IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
_____
                              :
THOMAS TREUSCH,               :      HON. JEROME B. SIMANDLE
                              :
             Plaintiff,       :      Civil No. 11-4874 (JBS/JS)
                              :
      v.                      :
                              :          OPINION
CENTER SQUARE SUPERMARKET,    :
LLC, and UNITED FOODS &       :
COMMERCIAL WORKERS UNION,     :
LOCAL 152,                    :
                              :
             Defendants.      :
_____
```

APPEARANCES:

George R. Szymanski, Esq.
LAW OFFICES OF GEORGE R. SZYMANSKI
1370 Chews Landing Road
Laurel Springs, NJ 08021
     Attorney for Plaintiff Thomas Treusch

Thomas J. Bradley, Esq.
MCBREEN & KOPKO
Eight Penn Center, Suite 1400
1628 John F. Kennedy Boulevard
Philadelphia, PA 19103
     Attorney for Defendant Center Square Supermarket, LLC

Steven J. Bushinsky, Esq.
O'BRIEN, BELLAND & BUSHINSKY, LLC
1526 Haddonfield-Berlin Road
Cherry Hill, NJ 08003
     Attorney for Defendant United Foods & Commercial Workers
     Union, Local 152

**SIMANDLE**, Chief Judge:

I.  **INTRODUCTION**

        This matter is before the Court on Defendant United Foods &

Commercial Workers Union, Local 152's ("Local 152") motion for summary judgment [Docket Item 23] and Defendant Center Square Supermarket, LLC's ("Center Square" or "ShopRite") motion for summary judgment [Docket Item 28].  Plaintiff Thomas Treusch ("Plaintiff" or "Mr. Treusch") has filed opposition to both motions.

The instant action arises out of the Plaintiff's discharge from employment by Defendant Center Square.  The Plaintiff maintains he was falsely accused of sexual harassment and thereby wrongfully terminated.  Specifically, the Plaintiff argues that his gender was a significant contributing factor to the decision to terminate him.  The Plaintiff also maintains that Local 152 failed to adequately represent him and arbitrate his grievance.  Consequently, the Plaintiff filed this suit alleging breach of contract, breach of fiduciary duty and gender discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. ("NJLAD"), against the Defendants.  The Defendants now move for summary judgment arguing that the Plaintiff's complaint for breach of contract and breach of fiduciary duty is time barred and that the Plaintiff has failed to adduce sufficient evidence to establish a prima facie case of reverse gender discrimination.

For the reasons discussed below, the court will grant both motions for summary judgment.  The court finds that the

2

Plaintiff's claims for breach of contract and breach of fiduciary duty arise under Section 301 of the National Labor Relations Act and are therefore subject to a six-month limitations period. Since the Plaintiff's complaint was filed more than six months after his final appeal to the Union was denied, his claims for breach of contract and breach of fiduciary duty against Center Square and the Union are time barred. As for the Plaintiff's NJLAD claim, the Plaintiff has not put forth sufficient evidence to establish his prima facie case for reverse gender discrimination against Center Square or Local 152 and therefore no rational jury could find that the Plaintiff was discriminated against in violation of the NJLAD.

Accordingly, the court will grant both motions for summary judgment and Plaintiff's complaint will be dismissed.


## II.  BACKGROUND

Plaintiff Thomas Treusch was employed by Center Square, also known as ShopRite, as a produce clerk from July 28, 2006 until his discharge on December 6, 2009 and was 53 years old at the time of his termination. (Center Square's Statement of Uncontested Facts ¶ 1.) Plaintiff was a member of Defendant Local 152 throughout his employment with Center Square. (Id. at ¶ 3.) Local 152 had a Collective Bargaining Agreement ("CBA") with Center Square which provided, among other things, that union

3

members could only be terminated upon a showing of "just cause."
(Id. at ¶ 4.)

The Plaintiff did not have an oral or written employment contract with Center Square.  However, the Plaintiff received a New Associate Welcome Packet on June 17, 2006, prior to working for Center Square, which contained several store policies, including Center Square's policy for handling sexual harassment. (Pl.'s Ex. A.)  The Plaintiff also signed an Acknowledgment form on June 17, 2006 which stated:

> I acknowledge that if I am employed by ShopRite, my employment will be "at will" which means that either myself or ShopRite may terminate my employment with or without cause at any time.
>
> ...
>
> I understand that if I am employed by ShopRite, my employment will not be for any specified term and may be terminated by me or ShopRite for any lawful reason.
>
> ...
>
> I understand that the above conditions cannot be altered or amended, except in writing.

(Center Square's Reply Ex. A, Acknowledgment at 1.)

During July 2009, Plaintiff was advised by two of Center Square's owners, Tom and Maria Bottino, that a female co-worker named Pattie Johnson had lodged a complaint of sexual harassment against him.  (Id. at ¶ 5.)  Plaintiff categorically denied Pattie Johnson's allegations to the Bottinos.  (Id. at ¶ 5; Pl.'s Ex. B, Thomas Treusch Deposition taken January 18, 2012 ("Treusch

4

Dep.") at 25:12-26:23.)   The Bottinos decided not to take any
further action against the Plaintiff with regard to Johnson's
complaint.  However, Plaintiff was reminded by the Bottinos that
Center Square had a policy against sexual harassment and he was
warned that he should not engage in any illegal behavior.  The
Plaintiff was also cautioned by the Bottinos to stay away from
Ms. Johnson and not to ask her out.  (Treusch Dep. at 31:11-16.)

In August 2009, a fellow Center Square employee, Nick
Schwegel, reported an incident involving the Plaintiff and a
twenty-one year old female employee, Nicole Fach, to Human
Resources Assistant, Lauren Wynne.  (Pl.'s Ex. D, Deposition of
Nicholas Schwegel taken June 20, 2012 ("Schwegel Dep.") at 8:3-
9:10.)  Nick told Lauren Wynne that the Plaintiff made Nicole
feel uncomfortable during her break by making inappropriate
comments to her and grinning at her in a sexual manner.
(Schwegel Dep. at 6:4-7:4.)  Specifically, Schwegel, Nicole Fach
and another Center Square employee, Deanna, were sitting outside
at a picnic table during their lunch break discussing Nicole's
recently acquired tattoos.  The Plaintiff was sitting near the
Plaintiff but was not included in the conversation, according to
Schwegel.  Nicole then showed Schwegel and Deanna her tattoos
which were located on the small of her back by her hips.  At this
point, Schwegel testified that the Plaintiff "made a comment
about her looking good and kind of grinned in a very sexual

manner." (Schwegel Dep. at 6:8-10.)

In response to this comment, Schwegel testified that they ignored the Plaintiff and continued on with their conversation. Deanna made a comment about how her parents would kick her out of the house if she got another tattoo. Nicole made a similar comment that she would also be kicked out of the house for her tattoos. Then, according to Schwegel, the Plaintiff turned to Nicole and said, "If you ever got kicked out of your house, I would make room for you in my place any time." (Schwegel Dep. at 7:15-20.) Schwegel understood this comment to be the Plaintiff making a pass at Nicole. At that point, Nicole, Deanna and Schwegel left the picnic area and ended their break. On their way back into the store, Nicole made a comment to Schwegel that she felt uncomfortable. (Schwegel Dep. at 8:1-8.) Schwegel then decided to go to Lauren Wynne to report the incident because he felt the Plaintiff was serious in making a pass at Nicole and he did not want Nicole to feel uncomfortable in the workplace.

In particular, Schwegel testified that, "I wouldn't have taken it up if he said, 'Just kidding' or Nicole didn't feel uncomfortable, but he didn't say, 'I was just kidding.' He made the grin and it was a very serious statement to be making. It's not something you just say to a woman and then forget about it. And she felt very uncomfortable by the statement." (Schwegel Dep. at 10:15-21.)

In response to this situation, Lauren Wynne spoke with Nicole.  Nicole indicated that she did not want Lauren to pursue the matter any further because she didn't want to get the Plaintiff into trouble and "felt like maybe she could handle the situation."  (Pl.'s Ex. H, Deposition of Lauren Wynne taken June 20, 2012 ("Wynne Dep.") at 4:16-25.)

The Plaintiff recalled the August 2009 incident in his deposition.  The Plaintiff testified that Nicole was sitting at another table in the break room "commenting to a couple of other coworkers that she had gotten a couple of tattoos."  (Treusch Dep. at 51:4-9.)  Since the tattoos were not visible, the Plaintiff testified that Nicole stood up and pulled her top up in the back and lowered her jeans down in order to show the tattoos.  (Treusch Dep. at 51:11-14.)  The Plaintiff maintained that Nicole was showing everyone in the break room and that other people were making comments about how nice they looked.  (Treusch Dep. at 51:17-18; 54:18-21.)  The Plaintiff recalled that he may have said something about how the tattoos looked nice and he believed Nicole thanked him for the comment.  (Treusch Dep. at 54:18-21; 56:3-5.)

However, the Plaintiff denied making any statement that Nicole could move in with him if her parents kicked her out.  Specifically, Plaintiff testified that, "I never made a comment like that in my life."  (Treusch Dep. at 56:1-2.)  The Plaintiff

also testified that Nicole never discussed that day with him after it occurred and that her behavior toward the him did not change in anyway after that day.  (Treusch Dep. at 56:11-21.)

Later, on December 1, 2009, Nicole Fach filed a formal complaint of sexual harassment against the Plaintiff as a result of a second incident which occurred on November 20, 2009. Specifically, Nicole Fach complained that while she was in the store cleaning registers, Plaintiff approached her and made a comment about how she looked good in sweats and he liked her better this way.  Then Nicole claimed Plaintiff grabbed her hand and kissed it.  (Pl.'s Ex. C, Deposition of Nicole Fach taken June 20, 2012 ("Fach Dep."), ex. Fach-1, December 1, 2009 Statement.)  Nicole then testified that she pulled her hand back and said that her "hands were in a dirty bucket of water and that was disgusting." (Fach Dep. at 14:24-25.)  This incident is also captured on videotape, and the Court has viewed the DVD evidence submitted by Plaintiff's counsel.  (Pl.'s Ex. K.)  The actual incident is largely obstructed from view by a row of lights which visually blocks most of the interaction between the Plaintiff and Fach.  However, it is clear that the incident lasted no more than thirty seconds.  The video shows Nicole Fach walking in the direction of the Plaintiff from another part of the store and ultimately stopping to talk to the Plaintiff.  Shortly after Plaintiff kisses Fach's hand, the video shows Fach brusquely

8

walking away from the Plaintiff and the Plaintiff following at a short distance behind her.

At the time of these incidents, Nicole Fach was twenty-one and Thomas Treusch was fifty-three. (Fach Dep. at 10:8-9; Treusch Dep. at 8:2-4.)

As a result of Nicole Fach's December complaint, Center Square investigated the incident and eventually brought the Plaintiff in for a meeting with Tom Bottino, an owner of Center Square, Frank Bottino, the store manager, and Diane Trubiano, the shop steward. (Treusch Dep. at 39:16-22.) The Plaintiff did not deny kissing Nicole's hand and admitted to telling Nicole that she "did not look a mess" in her sweats. (Treusch Dep. at 41:4-11.) The Plaintiff explained that Nicole had told him she was having a bad day and that he was "just trying to reassure her to make her feel comfortable about herself and to show her to have a nice day" which is why he kissed her hand. (Treusch Dep. at 41:7-11.)

Since this was the second complaint lodged against the Plaintiff for sexual harassment, Tom Bottino told the Plaintiff that "they had no other recourse but to terminate him." (Treusch Dep. at 42:24-43:1.) Frank Bottino testified in his deposition that the main reason Plaintiff was terminated was because Center Square believed he had violated the company's sexual harassment policy by kissing Nicole's hand and making inappropriate comments

to her.  (Pl.'s Ex. I, Deposition of Frank Bottino taken June 20, 2012 ("Frank Bottino Dep.") at 14:3-7.) Consequently, Plaintiff was terminated from Center Square on December 6, 2009.

After Plaintiff was terminated, shop steward Diane Trubiano advised the Plaintiff to file a grievance contesting his termination through his union representative, which he did. (Treusch Dep. at 66:1-23; Center Square's Statement of Uncontested Facts ¶ 16.)  A Grievance Review Committee meeting was held on January 21, 2010 with regard to Plaintiff's grievance.  (Id. at ¶ 17.)  After this meeting, Plaintiff received a letter from Local 152 dated January 27, 2010 which advised him that the Grievance Review Committee had voted that no further action should be taken with regards to his grievance. (Id. at ¶ 18.)  The Plaintiff then filed an appeal of the decision of the Grievance Review Committee.  (Id. at ¶ 19.)  The Plaintiff received a letter from Brian String, President of Local 152, dated April 7, 2010, which explained that the Executive Board of Local 152 had met to consider his appeal of the Grievance Review committee's decision.  The letter advised the Plaintiff that it was the opinion of the Executive board not to proceed to arbitration with his grievance and that the Executive Board considered this matter closed.  (Id. at ¶ 20.)

After receiving the April 7, 2010 letter from the Executive Board, Plaintiff retained his present counsel to represent him in

10

this matter.  (Id. at ¶ 21.)  His counsel wrote a letter to Plaintiff's union dated June 21, 2010, which entreated his union representative to do everything in his power to get Plaintiff's job back for him.  (Id. at ¶ 22.)

The Plaintiff filed the instant complaint more than a year later on July 12, 2011 in the Superior Court of New Jersey, Law Division, Gloucester County.  The Union removed the case to federal court pursuant to 28 U.S.C. § 1441 and § 1446 on the basis of federal question jurisdiction.  The Union maintained in its Notice of Removal that the Plaintiff's claims against the Union for breach of the duty of fair representation and breach of contract arose out of the provisions of the Collective Bargaining Agreement between the parties and was therefore governed by federal law.  [Docket Item 1.]  The Plaintiff did not file a motion to remand or otherwise oppose removal.

Discovery is now concluded and the Defendants have filed the instant motions for summary judgment.


**III.  DISCUSSION**

**A.  Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a

reasonable jury could return a verdict for the non-moving party."
See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A
fact is "material" only if it might affect the outcome of the
suit under the applicable rule of law.  Id.  Disputes over
irrelevant or unnecessary facts will not preclude a grant of
summary judgment.  Id.  The Court will view any evidence in favor
of the nonmoving party and extend any reasonable favorable
inferences to be drawn from that evidence to that party.  Hunt v.
Cromartie, 526 U.S. 541, 552 (1999).  See also Scott v. Harris,
550 U.S. 372, 378 (2007) (The district court must "view the facts
and draw reasonable inferences in the light most favorable to the
party opposing the summary judgment motion.").

**B.  Plaintiff's Breach of Contract Claim**

Plaintiff brings a claim for breach of contract against
Center Square.  Plaintiff's complaint alleges:

> 12.  As a member of Local 152, the Plaintiff was entitled
> to the benefits and protections of the collective
> bargaining agreement between Local 152 and Center Square
> Supermarket.
>
> 13.  The collective bargaining agreement created a
> contract for continued employment between Mr. Treusch and
> Center Square Supermarket.
>
> 14.  This contract was breached by the defendant, Center
> Square Supermarket, LLC, because it discharged Mr.
> Treusch from employment without just cause.

[Docket Item 1, Notice of Removal, Ex. A at ¶¶ 12-14.]

Defendant Center Square argues that Plaintiff's breach of
contract claim must be dismissed because it has been preempted by

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and is barred by the LMRA's six month statute of limitations for claims arising under Section 301.  Specifically, Center Square argues that Plaintiff's claims arise out of Center Square's alleged breach of the Collective Bargaining Agreement between Center Square and Local 152.  Section 301 of the LMRA preempts state law claims when the contract claims are based on rights created under a CBA.  In this case, Plaintiff was terminated on December 6, 2009 and received the final notice from Local 152 that it would not arbitrate his grievance on April 7, 2010.  The Plaintiff did not file the instant action until July 12, 2011 which is well past the six-month deadline imposed by the LMRA.  See 29 U.S.C. § 160(b).  Therefore, Center Square argues summary judgment is appropriate to dismiss Plaintiff's breach of contract claim.

In his opposition, the Plaintiff argues that the LMRA does not preempt his state law breach of contract claim and as a result, New Jersey's six-year statute of limitations applies. The Plaintiff argues that the store policies provided to the Plaintiff in his Welcome Packet created an implied contract between Plaintiff and Center Square which gave the Plaintiff an expectation of continued employment if he did not violate any of these policies.  The Plaintiff maintains that a genuine issue of material fact exists as to whether he violated the store's sexual

13

harassment policy and therefore, his breach of contract claim remains viable.  The Plaintiff maintains that since his breach of contract claim arises out of the store policies and not the CBA, it should not be subject to the six-month limitations period in the LMRA.  The Plaintiff relies solely on <u>Woolley v. Hoffman-LaRoche, Inc.</u>, 99 N.J. 284 (1985), in support of his argument. In addition, the Plaintiff maintains that since he filed his claim in state court, a state law limitations period should apply.  The Plaintiff cites no case law in support of this argument.

In reply, Center Square contends that Plaintiff's arguments that an implied contract existed are without merit and should be disregarded by the court.  First, the Plaintiff did not plead his theory of implied contract in his complaint.  Indeed, the Plaintiff exclusively pleads that the CBA is the source of his contractual rights and the basis for his breach of contract claim.  Second, Center Square argues that Plaintiff's theory of an implied contract is negated by the fact that the Plaintiff signed an acknowledgment that his employment with Center Square was "at will" and could be terminated "for any lawful reason." (Center Square's Reply, Ex. A.)  Therefore, Center Square maintains that the court should reject Plaintiff's theory of implied contract and find that his breach of contract claim arises out of the CBA and is preempted by the LMRA.  Accordingly,

14

Center Square reiterates its argument that summary judgment is proper to dismiss Plaintiff's claim because it was filed well outside the six-month limitations period prescribed by the LMRA.

### 1. Plaintiff's Theory of Implied Contract

The Plaintiff's argument that an implied contract existed between himself and Center Square is unpersuasive.  First, this argument was raised for the first time in Plaintiff's opposition to summary judgment.  The Plaintiff did not plead any facts to support this theory of relief in his complaint.  In fact, the Plaintiff did not allege that he received any policies from Center Square let alone that these policies created an implied contract for continuing employment.  The Plaintiff has not moved to amend his complaint and instead raises this alternative theory of relief after discovery is complete and dispositive motions were filed.  Center Square had no notice of Plaintiff's claim for an implied contract and the Plaintiff should not be permitted to change his litigation strategy at this late stage of the proceedings.

Furthermore, Plaintiff's reliance on Woolley v. Hoffman-LaRoche, Inc., 99 N.J. 284 (1985), is misplaced in light of the fact that Plaintiff signed an Acknowledgment recognizing that his employment with Center Square was at-will and could be terminated for any lawful reason.

The New Jersey Supreme Court in Woolley addressed whether an

15

employment manual which expressly stated the company's commitment to job security and that employees would only be terminated for good cause created an implied contract between the employer and the company.  99 N.J. at 299-300.  The New Jersey Supreme Court held, "absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would otherwise be terminable at will."  Id. at 285.  The Woolley Court emphasized that an implied contract for continued employment arising from a company's manual would not exist so long as the employer provides "the inclusion in a very prominent position of an appropriate statement that there is no promises of any kind by the employer contained in the manual; . . . that the employer continues to have the absolute power to fire anyone with or without cause."  Id. at 309.

Here, despite the infirmities of his Complaint, the Plaintiff has failed to present any evidence to support his Woolley argument for an implied contract.  The Plaintiff has not provided any provision of Center Square's employment manual which purports to contain a promise by Center Square to only fire an employee for just cause.  More significantly, the Plaintiff did not disclose to the court in his opposition papers that the Plaintiff had signed an Acknowledgment expressly recognizing his

16

employment with Center Square was at will and consenting to
Center Square's authority to terminate him with or without cause
at any time.

Therefore, the Plaintiff has not met his burden to show that
an implied contract existed between him and Center Square for
continued employment.  Consequently, any claim Plaintiff has for
breach of contract arises out of the CBA between Local 152 and
Center Square.

### 2.   Plaintiff's breach of contract claim is untimely under the LMRA

It is well established that a claim brought by an employee
against his employer for breach of a collective bargaining
agreement falls within the purview of Section 301 of the Labor
Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), which
states: "Suits for violation of contracts between an employer and
a labor organization representing employees in an industry
affecting commerce as defined in this Act, or between any such
labor organizations, may be brought in any district court of the
United States having jurisdiction of the parties."  See Del
Costello v. Int'l Brotherhood of Teamsters, 462 U.S. 151 (1983).
As the Third Circuit has explained:

> Although Section 301 refers only to suits between
> employers and unions, and does not explicitly mention
> suits between employers and employees, the Supreme Court
> has read this provision to create federal jurisdiction
> over all claims that are substantially dependant upon
> analysis of the terms of a collective bargaining
> agreement, regardless of whether the claim is brought by

a union or directly by an employee.

Angst v. Mack Trucks, Inc., 969 F.2d 1530, 1536 n.5 (3d Cir. 1992).

Consequently, Section 301 of the LMRA preempts state law contract claims when these claims are based on rights created under a CBA.  Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1 (1983)("the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization") and Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 560 (1968).

"An action arising under § 301 is controlled by federal substantive law even though it is brought in a state court." Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 560 (1960).  See also Leonardis v. Burns Int'l Sec. Services, Inc., 808 F. Supp. 1165, 1174 (D.N.J. 1992).  The Supreme Court, in Del Costello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 169-70 (1983), held that the LMRA imposes a six-month limitations period for any action by an employee against an employer for breach of a CBA. Del Costello borrowed the six-month limitation period of section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), which states: "That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy

thereof upon the person against whom such charge is made. . . "

In this case, it is clear that Plaintiff's breach of contract claim arises under Section 301 of the LMRA and federal law applies.  The Plaintiff's argument that since he originally filed his complaint in state court and therefore New Jersey's six year statute of limitations should apply is without merit and completely unsupported by case law.  The Supreme Court has clearly held that a claim "arising under § 301 is controlled by federal substantive law even though it is brought in a state court."  Avco Corp., 390 U.S. at 560.  Therefore, the six-month limitations period for filing suit under § 301 of the LMRA applies to Plaintiff's breach of contract claim.

Here, the Plaintiff was notified of the final denial of his grievance from Local 152 in a letter dated April 7, 2010.  This letter was received by the Plaintiff, at the latest, on June 21, 2010, when his attorney wrote a letter to Plaintiff's union representative urging him to arbitrate the matter.  Consequently, viewing all facts in favor of the Plaintiff, the six-month limitations period began to run, at the latest, on June 21, 2010. The Plaintiff did not file the instant lawsuit until July 12, 2011, more than a year later, which is well outside the six-month limitations period under the LMRA.  Therefore, Plaintiff's breach of contract claim against Center Square is untimely.

Accordingly, Center Square's motion for summary judgment as

to Plaintiff's breach of contract claim will be granted.

## C. Plaintiff's Claim for Failure to Represent

Next, Plaintiff brings a claim for breach of contract and breach of fiduciary duty against Local 152.[1]  Specifically, the Plaintiff alleges:

> 15.  Local 152 had a duty to fairly and adequately represent Thomas Treusch in the dispute that he had with his employer concerning his discharge from employment on December 6, 2009.
> 16.  As a result of the failure of Local 152 to adequately and fairly represent the plaintiff, Thomas Treusch was damaged significantly.

[Docket Item 1, Notice of Removal, Ex. A at ¶¶ 15-16.]

Local 152 filed the instant motion for summary judgment seeking to dismiss this count of Plaintiff's complaint because it is untimely.  Similar to Center Square's arguments for summary judgment discussed supra in Subsection III.B.2, Local 152 argues that the Plaintiff's claim for failing to adequately represent the Plaintiff was filed outside the six months limitation period under Section 301 of the Labor Management Relations Act, 29

---

[1] In his opposition papers to the previously filed motion to dismiss, the Plaintiff disclosed to the court a typo in the Caption to Count III of his complaint, wherein "the third cause of action in the plaintiff's complaint was erroneously stated as being against the defendant Center Square Supermarket, LLC."  The Plaintiff, in disclosing this error, stated that "[o]bviously, from the allegations made in paragraphs 15 and 16 of the Plaintiff's complaint, the causes of action described in these paragraphs are against Local 152, not Center Square Supermarket." (Pl.'s Op. at 1.)  Consequently, the Court construes Count III to be alleged against Defendant Local 152, not Center Square.

U.S.C. § 185, and is therefore barred by the statute of limitations.  Local 152 relies primarily on <u>Del Costello v. Int'l Brotherhood of Teamsters</u>, 462 U.S. 151 (1983); <u>Federation of Westinghouse Independent Salaried Unions v. Westinghouse Elect. Corp.</u>, 736 F.2d 896 (3d Cir. 1984); and <u>Whittle v. Local 641</u>, 56 F.3d 487 (3d Cir. 1995) in support of its argument that the statute of limitations for a breach of duty of fair representation claim is six months.

The Plaintiff filed opposition and relies solely on <u>Brown v. College of Medicine and Dentistry</u>, 167 N.J. Super. 532 (N.J. Super. Law. Div. 1979) and argues that the statute of limitations for this action is six years, not six months.  Specifically, the Plaintiff states that his theories for liability against Local 152 are common law causes of action for lost income, as opposed to personal injuries, and should therefore be governed by New Jersey's six year statute of limitations.  The Plaintiff does not address his failure to challenge Local 152's removal of this action which was based on the premise that this count of Plaintiff's Complaint alleging breach of fiduciary duty and breach of contract arose under federal law, specifically Section 301 of the LMRA.  The court finds the Plaintiff's arguments unpersuasive and will grant Local 152's motion for summary judgment.

"It is well settled that both the enforcement of collective

bargaining agreements and the redress for a breach of a union's
duty of fair representation are within the ambit of Section 301"
of the Labor Relations Act and fall within the original
jurisdiction of the federal court.  Guaracino v. Communication
Workers of America, Local 2552, 330 F. Supp. 679, 680 (E.D. Pa.
1971)(citing Vaca v. Sipes, 386 U.S. 171 (1967)).  The duty of
fair representation has judicially evolved and "unlike state tort
and contract law, is a part of federal labor policy."  Breininger
v. Sheet Metal Workers Int'l Ass'n Local Union 6, 493 U.S. 67, 79
(1989).  Accordingly, it is clearly established that federal law
governs an employee's claim against a union for breach its duty
of fair representation.  Vaca, 386 U.S. at 177 (holding that it
is obvious an employee's complaint alleging a breach by a union
of the duty of fair representation which is grounded in federal
statutes is therefore governed by federal law).

An employee may bring a claim against his employer for
breach of a collective bargaining agreement and may also bring a
claim against the union for breach of its duty of fair
representation.  Such a suit:

> comprises two causes of action.  The suit against the
> employer rests on § 301, since the employee is alleging
> a breach of the collective-bargaining agreement.  The
> suit against the union is one for breach of the union's
> duty of fair representation, which is implied under the
> scheme of the National Labor Relations Act. Yet the two
> claims are inextricably interdependent.  To prevail
> against either the company or the Union, . . .
> employee-plaintiffs must not only show that their
> discharge was contrary to the contract but must also

22

carry the burden of demonstrating breach of duty by the
Union.  The employee may, if he chooses, sue one
defendant and not the other; but the case he must prove
is the same whether he sues one, the other, or both. The
suit is thus not a straightforward breach-of-contract
suit under § 301 ... but a hybrid § 301/fair
representation claim, amounting to a direct challenge to
'the private settlement of disputes under the
collective-bargaining agreement. Also . . . it has no
close analogy in ordinary state law.

Del Costello, 462 U.S. at 164-65 (citations omitted).

In determining the statute of limitations for such a hybrid
Section 301 law suit, the Supreme Court declined to resort to
state law.  Instead, the Supreme Court looked to the National
Labor Relations Act, which establishes a six-month period for
making charges of unfair labor practices.  The Supreme Court
reasoned that the balance struck by Congress in establishing the
six month limitations period under Section 10(b) of the NLRA was
precisely the same balance at issue in hybrid Section 301
lawsuits.  In particular, the Supreme Court stressed the national
interest in stable bargaining relationships and finality of
private settlements as well as an employee's interest in setting
aside an unjust settlement.  The Supreme Court reasoned that the
six month limitations period under the NLRA was a closer analogy
than available state statutes, and held "the federal policies at
stake and the practicalities of litigation make [Section 10(b) of
the NLRA] a significantly more appropriate vehicle for
interstitial lawmaking."  Therefore, the Supreme Court held the
statute of limitations to bring a Section 301 hybrid claim is six

months.  Del Costello v. International Brotherhood of Teamsters,
462 U.S. 151, 171-72 (1983).

Subsequently, the Third Circuit applied the reasoning in Del
Costello to apply a six month limitations period for suits
brought under Section 301 to compel arbitration.  Federation of
Westinghouse Independent Salaried Unions v. Westinghouse Elect.
Corp., 736 F.2d 896 (3d Cir. 1984).  The Third Circuit explained:

> We hold that essentially for the same reasons relied on
> in DelCostello for borrowing section 10(b) as the
> statute of limitations in hybrid suits, that section
> should be borrowed for application to actions under
> section 301 to compel arbitration. Application of a
> six-year state statute of limitations stretches out
> industrial disputes far longer than most recent cases
> have deemed desirable.

Id. at 901.

The Plaintiff here relies on Brown v. College of Medicine
and Dentistry, 167 N.J. Super. 532, 536 (Law. Div. 1979), which
held a six year statute of limitations period applies to a claim
involving the breach of a union's duty of fair representation.
The Plaintiff's reliance is misplaced for several reasons.
First, this case is a New Jersey Superior Court case that has no
precedential authority on this court.  Second, and more
significantly, this case was decided prior to the United States
Supreme Court's opinion in Del Costello, and therefore is
unpersuasive.  Indeed, the court in Brown discussed the unsettled
state of the law at the time of its decision and referenced the
circuit split which existed in 1979 prior to the Supreme Court's

24

decision in Del Costello.  167 N.J. Super. at 534-35.  Therefore, the Court finds Brown inapplicable to the instant action.  To the extent Brown held that a six-year limitation period applied to suits for breach of the duty of fair representation, it was overruled by Del Costello.

Here, the Plaintiff alleges Local 152 breached its duty of fair representation when it declined to arbitrate his grievance.  For the reasons set forth by the Supreme Court in Del Costello and by the Third Circuit in Federation of Westinghouse Independent Salaried Unions, the court finds the six month statute of limitations period applies to this claim.

"[W]here an employee sues a union for breach of its duty of fair representation, the limitations period commences when the plaintiff receives notice that the union will proceed no further with the grievance."  Vadino v. A. Valey Eng'rs, 903 F.2d 253,260 (3d Cir. 1990)(citations omitted).

In this case, the Plaintiff was notified of the Union's decision not to arbitrate his grievance on or about April 7, 2010.  (Def.'s Ex. B.)  On June 21, 2010, Plaintiff's counsel wrote to Local 152 and advised the union of his representation and noted that the Union had a duty of fair representation and urged the Union to do everything in its power to get Plaintiff's job back.  (Def.'s Ex. C.)  The instant action was not filed until July 12, 2011.  [Docket Item 1.]  The Plaintiff has put

forth no evidence to refute these dates and has put forth no argument that equitable tolling is applicable.  Therefore, the Plaintiff's claim against Local 152 for breach of its duty of fair representation is barred by the statute of limitations as it was filed more than one year after the Plaintiff was informed that Local 152 would not arbitrate his grievance.

Accordingly, Defendant Local 152's motion for summary judgment will be granted as to Count III of Plaintiff's complaint.

### C. Plaintiff's NJLAD Claim

Plaintiff's final claim is against both Defendants for violation of the NJLAD.  Specifically, the Plaintiff alleges:

> 11.  A significant contributing factor to the decision to discharge the plaintiff from employment was the male gender of the plaintiff.  This violated the New Jersey Law Against Discrimination.

[Docket Item 1, Notice of Removal, Ex. A at ¶ 11.]  This is the sole allegation supporting Plaintiff's NJLAD claim.

Defendant Center Square filed its motion for summary judgment seeking to dismiss Plaintiff's NJLAD claim.  Center Square argues Plaintiff's claim for discrimination under the NJLAD fails as a matter of law because the Plaintiff has failed to establish a prima facie case of reverse gender discrimination and has failed to produce evidence establishing that Center Square's reasons for terminating him were pretextual. Specifically, Center Square maintains that since Plaintiff is a

male, he is a member of the majority and cannot establish that he is a member of the protected class.  Center Square argues that New Jersey courts require male plaintiffs in gender discrimination cases to demonstrate that female employees who were involved in acts of comparable seriousness did not suffer the same adverse employment action in order to meet the first element of their prima facie case.  Alternatively, a male plaintiff can also meet the first element of his prima facie case for gender discrimination by presenting evidence that his employer discriminates against males in general.

Center Square argues that the Plaintiff has produced no such evidence and therefore his NJLAD claim must be dismissed.  Center Square relies primarily on Erickson v. Marsh & McClennan Co., 117 N.J. 539 (1990); Lehmann v. Toys'R'Us, 132 N.J. 587 (1993); and Aurelio v. Bd. of Educ., No. 06-3146, 2009 U.S. Dist. LEXIS 52759 (D.N.J. June 23, 2009) in support of its argument.

In addition, Center Square argues that the Plaintiff has put forth no evidence to demonstrate that Center Square's reason for terminating him was pretextual.  In particular, Center Square contends that the Plaintiff was terminated for violating the store's sexual harassment policy and the Plaintiff has put forth no evidence to refute this reason.

In his opposition, the Plaintiff maintains that he has presented sufficient evidence against both Center Square and

Local 152 to sustain his NJLAD claim.  In addition, the Plaintiff maintains in his opposition that the Defendants violated the NJLAD because they discriminated against the Plaintiff on the basis of his age (53) and ethnicity (European-American) as well as his gender.  With regard to Center Square, the Plaintiff argues he has satisfied the first element of his prima facie case because "females constitute the majority of employees in most supermarkets in this region, and consequently, they are the majority."  (Pl.'s Opp. at 9.)  The Plaintiff provides no record citation or other evidentiary support for this statement.

The Plaintiff next maintains that he has established sufficient evidence that similarly situated females were treated more favorably than males at Center Square.  Plaintiff points to the incident where Nicole Fach lifted up the back of her shirt to show her tattoos to her co-workers during her lunch break.  Plaintiff characterizes this action in his brief as a "partial strip tease" and argues that no discipline was imposed on Nicole Fach as a result of this incident.  (Pl.'s Opp. at 10.)  Plaintiff argues this is in contrast to his own situation, when Plaintiff "did something that is customarily associated with a male, that is, the gentlemanly act of kissing a woman's hand, he was promptly terminated. . . "  Id.

With regard to Local 152, the Plaintiff maintains that the NJLAD applies to labor unions and cites Baliko v. Steacker, 275

28

N.J. Super. 182 (App. Div. 1994), for this proposition.  The Plaintiff relies on the testimony of shop steward Diane Trubiano to support his claim for gender discrimination under the NJLAD. In particular, Plaintiff argues that Trubiano testified that her opinion on his situation was, "He was a grown man, he should know better.  That was a young girl, whether he was joking or not is beside the point."  (Pl.'s Ex. G, Deposition of Diane Trubiano taken June 20, 2012 ("Trubiano Dep.") at 14:5-7.)  The Plaintiff argues that this testimony illustrates Local 152's gender discrimination against the Plaintiff and shows how Trubiano "totally sided with management and against Thomas Treusch." (Pl.'s Opp. at 11.)

Local 152 filed a reply to Plaintiff's opposition and argued that Plaintiff cannot maintain his NJLAD claim against the union. First, Local 152 contends that the NJLAD prohibits unlawful employment discrimination and the Plaintiff has not alleged that Local 152 was his employer.  Consequently, since Local 152 did not act in any manner as Plaintiff's employer, Plaintiff cannot sustain an NJLAD claim against it.  In addition, Local 152 argues that Plaintiff's NJLAD claim is inextricably intertwined with Plaintiff's rights under the CBA and is therefore preempted by the LMRA.  Local 152 relies on Maher v. N.J. Transit Rail Operations, Inc., 125 N.J. 455 (1991).

Center Square also filed a reply and reiterated its original

arguments in support of its motion for summary judgment.

### 1.  Plaintiff's NJLAD Claim against Center Square

The NJLAD makes it unlawful for an employer to discriminate against an employee on the basis of an employee's gender.  As a result of the inherent "difficulty of proving discriminatory intent,"  the New Jersey Supreme Court adopted the McDonnell Douglas burden-shifting framework to analyze whether an employer engaged in unlawful discrimination when there is only circumstantial evidence of such discrimination.  Zive v. Stanley Roberts, Inc., 182 N.J. 436, 446-47 (2005); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Under the McDonnell Douglas test:

> (1) the plaintiff must come forward with sufficient evidence to constitute a prima facie case of discrimination; (2) the defendant then must show a legitimate non-discriminatory reason for its decision; and (3) the plaintiff must then be given the opportunity to show that defendant's stated reason was merely a pretext or discriminatory in its application.

Dixon v. Rutgers, The State Univ. of N.J., 110 N.J. 432 (1988).

A plaintiff's evidentiary burden in establishing a prima facie case is "rather modest:  it is to demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent - i.e., that discrimination *could* be a reason for the employer's action."  Zive, 182 N.J. at 447.  However, if an employer comes forward with admissible evidence of a legitimate, non-discriminatory reason for its adverse

employment action, the presumption of discrimination disappears
and the burden of production shifts back to the plaintiff.
Bergen Commer. Bank v. Sisler, 157 N.J. 188, 211 (1999.)  The
plaintiff employee must then show by a preponderance of the
evidence that the reason given by the employer was pretext for
discrimination by demonstrating "that the employer's reason was
both false and motivated by discriminatory intent." Henry v. New
Jersey Dept. of Human Services, 204 N.J. 320, 331 (2010).
"Although the burden of production shifts throughout the process,
the employee at all phases retains the burden of proof that the
adverse employment action was caused by purposeful or intentional
discrimination." Sisler, 157 at 211.

　　　In order to satisfy the first step of the McDonnell Douglas
test, the plaintiff must show the following four elements to
establish a prima facie case for discriminatory discharge under
the LAD:  (1) that he is a member of a protected group; (2) that
he was qualified for a position and was performing his job at a
level that met the employer's legitimate expectations; (3) that
he was nevertheless terminated; and (4) that the employer sought
someone else to perform the same work after he left. Clowes v.
Terminix International, Inc., 109 N.J. 575, 597 (1988).

　　　However, in reverse gender discrimination cases, "the
rebuttable presumption of discrimination embodied in the *prima
facie* elements does not apply." Erickson v. Marsh & McLennan

31

Co., Inc., 117 N.J. 539, 551 (1990).  This is because a male
plaintiff in a gender discrimination case is not a member of the
minority which has historically been victimized by
discrimination.  Id. at 551-52.  Consequently, the first prong of
the prima facie case has been modified in reverse gender
discrimination cases to reflect that males are not traditionally
a disfavored class.  Therefore, a male plaintiff alleging
unlawful gender discrimination under the NJLAD "must substantiate
that the background circumstances support the suspicion that the
defendant is the unusual employer who discriminates against the
majority" in order to meet the first element of his prima facie
case.  Id. at 551.

     The Plaintiff puts forth two arguments in his opposition to
show that he has satisfied his burden to establish a prima facie
case of reverse gender discrimination.  First, the Plaintiff
conclusively states that females constitute the majority of
employees in most supermarkets in this region and therefore, as a
male, he is in the minority.  The court finds this argument
without merit.  The Plaintiff has provided no record evidence to
support this bald conclusion, nor is it probative of whether
Center Square itself was the unusual employer who discriminates
against the male majority.

     Second, the Plaintiff argues that Nicole Fach was a
similarly situated female employee who was not reprimanded for

32

her own acts of sexual harassment, in particular showing her tattoos on her back to her co-workers during her lunch break. Therefore, the Plaintiff contends that this demonstrates that Center Square did not discipline female employees for acts of sexual harassment and instead harshly disciplined male employees, including the Plaintiff. The court finds this argument unpersuasive and unsupported by the record, and frankly rather ridiculous.

First, no complaints of sexual harassment were filed against Nicole Fach after she revealed her tattoos to her co-workers. Her display of a tattoo on her lower back was in no sense lewd nor was it unwelcome; Plaintiff himself seemed to appreciate and enjoy her display. For Plaintiff to call this "sexual harassment" is frivolous as that term is understood in the NJLAD.

Second, if the Plaintiff felt uncomfortable by this display, which he somewhat disingenuously characterized in his brief as a "partial strip tease," then his recourse was to file a complaint with Human Resources, which he did not do. In fact, none of Nicole Fach's co-workers filed a complaint alleging that Fach's actions made them uncomfortable. There is no suggestion in the record that anyone felt Nicole's conduct was objectionable. Without a complaint of sexual harassment, Center Square had no basis to issue disciplinary action against Nicole Fach.

Furthermore, the Plaintiff has produced no evidence that

Nicole Fach was an employee who had been pre-warned for violating Center Square's sexual harassment policy and therefore should have been subject to termination for the tattoo incident.  At the time of his discharge, the Plaintiff had already been warned about Center Square's sexual harassment policy and had one complaint of sexual harassment filed against him, which similarly arose from his unwanted conduct toward a female co-worker.  There is no evidence that the same is true for Nicole Fach.  Consequently, Nicole Fach cannot be considered a similarly situated female employee who was treated more favorably by Center Square.[2]

Viewing all facts in the light most favorable to the Plaintiff, no rational jury could conclude that Center Square was the unusual employer who discriminated against the male majority.  As a result, the Plaintiff is unable to establish the first element of his prima facie case for discriminatory discharge

---

[2] To the extent Plaintiff argues he was also discriminated against because of his age (53) and ethnicity (European American), the court rejects these arguments because the Plaintiff has failed to plead age discrimination or racial discrimination in his complaint.  These claims have arisen for the first time in Plaintiff's opposition to summary judgment and Center Square had no notice of these arguments.  The Plaintiff has not filed a motion to amend his complaint to pursue these claims.  Moreover, Plaintiff's opposition fails to set forth sufficient record evidence to establish these claims.  Accordingly, the court will disregard Plaintiff's belated attempts to expand his complaint and will not address the merits of Plaintiff's arguments regarding age discrimination and racial discrimination under the NJLAD.

under the NJLAD.  Therefore, summary judgment will be granted and Plaintiff's NJLAD claim against Center Square will be dismissed.

### 2.  Plaintiff's NJLAD Claim against Local 152

The prohibitions against unlawful discrimination and employment discrimination contained in the NJLAD are expressly applicable to labor unions.  N.J.S.A. 10:5-12(b) provides that it shall be unlawful "[f]or a labor organization, because of . . . gender identity or expression . . . to discriminate in any way against any of its members. . . ."  Therefore, Local 152's arguments that it cannot be held liable under the NJLAD because it was not Plaintiff's employer is without merit.

In order to establish a prima facie case of gender discrimination under the LAD, a plaintiff must show the following four elements: (1) that he is a member of a protected group; (2) that he was qualified for a position and was performing his job at a level that met the employer's legitimate expectations; (3) that he was subjected to an adverse employment action; (4) under circumstances that give rise to an inference of unlawful discrimination.  Shah v. State of Wisconsin, No. 11-0419, 2011 WL 5192127, *6 (D.N.J. October 31, 2011); Young v. Hobart West Group, 385 N.J. Super. 448, 464 (App. Div. 2005).  In addition, as discussed above, the first prong of the prima facie case has been modified in reverse gender discrimination cases. Accordingly, a male plaintiff in alleging unlawful gender

35

discrimination under the NJLAD "must substantiate that the
background circumstances support the suspicion that the defendant
is the unusual [labor union] who discriminates against the
majority." Erickson, 117 N.J. at 551.

In this case, the Plaintiff claims Local 152 failed to
represent him in his grievance against Center Square because of
his gender.  In particular, the Plaintiff argues shop steward
Diane Trubiano did not support him because he was a male.  First,
the court must point out that the Plaintiff has plead no facts in
his complaint to support this claim.  The Plaintiff merely plead
that his gender was "a significant contributing factor to the
decision to discharge the plaintiff from employment."  [Docket
Item 1, Notice of Removal, Ex. A at ¶ 11.]  The Plaintiff did not
allege any facts in his complaint that establish Local 152 was
involved in the decision to discharge the Plaintiff, nor has he
presented such evidence in opposition to Local 152's motion.
Further, the Plaintiff did not allege in his complaint that shop
steward Diane Trubiano failed adequately support him during his
termination meeting with Frank and Tom Bottino because of his
gender - indeed, Diane Trubiano's role as shop steward is not
mentioned anywhere in Plaintiff's complaint.  Consequently, Local
152 had no notice that the Plaintiff was bringing an NJLAD claim
based on Diane Trubiano's role as shop steward at the time of
Plaintiff's discharge.

36

Disregarding the infirmities of Plaintiff's pleadings, the Plaintiff has failed to adduce sufficient evidence to establish a prima facie case against Local 152 for gender discrimination under the LAD.  In particular, the Plaintiff has not established that he is a member of a protected class or that the union's decision not to arbitrate his grievance occurred under circumstances which give rise to an inference of unlawful discrimination.

The Plaintiff relies solely on a partial segment of the testimony of Diane Trubiano who stated in her deposition that Plaintiff was a grown man and Nicole Fach was a young girl and he should have known better than to kiss her hand.  Plaintiff characterizes this statement in his brief as Local 152 focusing exclusively on Plaintiff's male gender in evaluating whether to arbitrate his grievance.  There are several flaws in Plaintiff's argument.

First, the Plaintiff quotes a partial segment of Trubiano's deposition testimony and strategically leaves out Trubiano's emphasis on the fact that this was the second complaint to be filed against the Plaintiff for sexual harassment.  Trubiano was asked how she felt personally about the fairness of Thomas Treusch's termination and the full text of Trubiano's reply reads:

> It wasn't the incident with Nicole alone, it was the fact
> that this was his second time.  He was pre-warned.  He's

a grown man, he should know better.  That was a young
girl, she had – whether he was joking or not is besides
the point.  This man was already warned in July not to do
that, it was inappropriate.  There's sexual harassment
law.  Everyone knows that's in existence.  He did it
again.  I don't have a defense for that.

(Trubiano Dep. at 14:3-11.)  It is clear from this testimony that
Trubiano felt the decision to terminate the Plaintiff was fair
because this was the Plaintiff's second offense and he was pre-
warned.  Trubiano thus believed that there was no available
defense for Treusch's unwanted kissing of a female co-worker when
he had already been warned against similar conduct.  Nothing in
the record suggests that this view is unreasonable or unfair to
Treusch, let alone that it is a pretext for gender discrimination
by the labor union.

There is no evidence in the record of circumstances that
give rise to an inference of unlawful gender discrimination with
regard to Local 152's representation of the Plaintiff.  The
Plaintiff mischaracterizes Trubiano's testimony and his sole
reliance on her deposition to establish his prima facie case is
misplaced.  It is clear from the record that Trubiano did not
have decision-making authority with regard to Plaintiff's
termination nor did she have any influence regarding whether
Local 152 would arbitrate his grievance.  The most Trubiano could
do was refer Plaintiff to the union representative for further
action, which she did.  There is no evidence that anyone in
decision-making authority within Local 152 considered Plaintiff's

gender in any way in deciding whether to arbitrate his grievance.

Consequently, no genuine issues of material fact exist which prevent summary judgment and no rational jury could find that the Plaintiff has met the first and fourth elements of his prima facie case.  The Plaintiff has failed to establish that Local 152 is the unusual labor union which discriminates against the majority which is required for a reverse gender discrimination case under the NJLAD.  Erickson, 117 N.J. at 551.  The Plaintiff has also failed to establish that Local 152's decision not to arbitrate his grievance was made under circumstances which raise an inference of discrimination.

Accordingly, summary judgment will be granted as to Plaintiff's NJLAD claim against Local 152.


**IV.  CONCLUSION**

For the reasons discussed above, Defendant Local 152's motion for summary judgment [Docket Item 23] and Defendant Center Square's motion for summary judgment [Docket Item 28] will be granted and the Plaintiff's complaint will be dismissed.  The accompanying Order will be entered.


**January 31, 2013**                    **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        Chief U.S. District Judge